**Thessolonia SMITH**, by Julia Brown, his mother and next friend, and Julia Brown, Appellants,

v.

**UNITED STATES of America**, Appellee.

No. 19258.

United States Court of Appeals
Ninth Circuit.

Sept. 11, 1964.

**238**

---

Robert A. Parrish, Parrish, Walter & Ingraham, Fairbanks, Alaska, for appellants.

Warren C. Colver, U. S. Atty., H. Russel Holland, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

CHAMBERS, Circuit Judge.

Thessolonia Smith, called Junior, lives in Fairbanks, Alaska. In 1962 when he was thirteen years old he was a member of the Woolworth store's Pony League baseball team that went out to Eielson Air Force Base, near Fairbanks, to play a game with another team in the league with its home at the base. The Army Air Force was in control of the area of two baseball playing fields here involved.

Apparently the Woolworth team was having a practice session or "warm-up" on one field before the game began. Junior was chasing fly balls. To recover one ball, he was sent over the fence separating the two fields. In the second field, he apparently recovered the first ball and returned it. No sooner than this was done, another fly ball came over the fence and Junior set out after it. He crashed into a standing short piece of pipe which had been "sawed off" but the stub had not been removed from the playing field when it ceased to be part of a flagpole. There was on the stub of the pole some sort of bracket. At the base of the stub was a large cement collar buttressing the pole. The collar looked not unlike a circular park bench.

As a result of crashing into the bracket on the pole, Junior lost an eye. His mother brought this action under the Federal Tort Claims Act for Junior and herself.

As required by the Act, the case was judge tried.

█ At the close of all the evidence, the court granted the government's motion for judgment which had been made at the close of plaintiff's case. In this posture, the trial court was entitled to consider all of the evidence before it. It found the government free from negligence and that the injury was due to Junior's own negligence.

██ Under most any state's rules of status on land, Junior appears to have been an invitee on the Air Force base. As such the Air Force owed him a duty of reasonable care.

We have trouble with the trial court's finding of no negligence on the part of the government. On the flagpole, a stationary condition antedating the date of the ball game, proved largely by pictures, we are in about as good a position to weigh that condition as the trial judge. Of course, even the government has a right to use its own property, but in weighing negligence, we think utility of the object has some bearing. Here the object's purpose has been positively abandoned, leaving only the base and the stub pipe with its brackets which proved to be very dangerous. To us, some one or more persons in the Air Force was careless in leaving the decommissioned flagpole up on a field where it could do nothing but cause trouble.

█ It may be said that as to such a flagpole, if it was careless to leave it up, then it was careless to run into it. We do not believe this necessarily so with the thirteen year old boy, not to be judged as an adult. But as to whether on the day in question he exercised the care that would ordinarily be used by an ordinarily prudent thirteen year old boy was probably in the end a question of fact. We think there was an area in which the trial court was in better position to judge than we. Unlike the stubbed flagpole, Junior was not a static condition. There was testimony of witnesses about his activity at the time in question. We cannot say that the court was

in any position to find any of the witnesses swore falsely, but there was a story of mobile conduct, and on the trial court's appraisal of that we cannot say from our vantage point as a matter of law that the trial court was clearly erroneous in finding that Junior was negligent. The trial court heard Junior and others testify. He may have thought this or that witness mistaken about some things. Maybe not. But there were a number of nuances in the mobility of Junior's activity on the ball field for him to consider.

Counsel for appellant in oral argument appealed to our consciences. We are sure he meant no offense. All we can say is we find no pleasure in ruling as we do. We find it an unpleasant duty.

The judgment is affirmed.